No. 47,053

EDNA SHELTON, *Appellant,* v. LEO J. PHALEN, et al. and the EMPLOY-MENT SECURITY BOARD OF REVIEW, *Appellees.*

(519 P. 2d 754)

Opinion filed March 2, 1974.

*Charles E. Worden,* of the Legal Aid Society of Topeka, Inc., argued the cause and was on the brief for the appellant.

*Marlin A. White,* of Holton, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: The issue in this case is whether a married woman who quits her job to accompany her husband to a different city is thereby disqualified for unemployment compensation benefits until she again becomes employed and earns eight times what would otherwise be her weekly benefit.

The claimant, Mrs. Edna M. Shelton, began working at covered employment in a Topeka nursing home in June, 1967. On June 30, 1971, she quit. Her announced reason was that her husband had found a job in San Antonio, Texas, and she wanted to join him there.

In San Antonio she says she looked for work, but was unsuccessful; on July 22 she applied for unemployment compensation. Her claim was denied by an examiner of the employment security division on August 6, and she appealed. A hearing was held by a referee on October 5, and the examiner's decision was affirmed. (In the meantime claimant had returned to Topeka and had found new employment.) The employment security board of review also affirmed and claimant commenced this statutory action in the district court of Shawnee county to secure judicial review. Her claim met the same fate there, and she has now appealed to this court.

At each level below claimant was held to be disqualified for benefits solely because of the reason she gave for quitting her job, *viz.*, to join her husband in his new home. It was found at all levels that she left "because of domestic or family responsibilities." Therefore, it was held, she was disqualified under the first clause of the proviso in K. S. A. 44-706 (*a*). That statute will be discussed below.

Claimant contends that if the statute is construed, as it was below, to deny her benefits simply because of her reason for quitting, it denies her the equal protection of the laws. She makes a two-pronged attack on the classifications in the statute. First, she says that disqualifying those who leave a job because of domestic or family responsibilities creates an unreasonable classification which bears no reasonable relationship to the objectives of the unemployment compensation law. Second, she argues that by disqualifying those in particular who leave their job to accompany their spouses to another state, the statute imposes an unwarranted restriction upon the constitutionally protected right to travel.

Her argument requires first an overall look at and then a detailed analysis of the applicable portions of the employment security law.

K. S. A. 44-705 prescribes qualifications for *eligibility* for unemployment compensation benefits. Highly summarized, under that statute an unemployed claimant is eligible if he (*a*) has registered for work, (*b*) has made a claim for benefits, (*c*) is able to work and available for work, (*d*) has gone through a one-week waiting period, and (*e*) has sufficient work credits.

K. S. A. 44-706 specifies grounds for the *disqualification*, for the various periods indicated, of an otherwise eligible claimant. These include:

(*a*) One who quits work voluntarily: 6 weeks, except certain persons who must earn eight times their weekly benefit to remove the disqualification. (This is the paragraph under which claimant was disqualified below.)

(*b*) One discharged for breach of a duty to his employer: 6 weeks, except that if discharged for "gross misconduct" he must earn eight times his weekly benefit to remove the disqualification.

(*c*) Failure to apply for or accept suitable work: 6 weeks.

(*d*) Participating in a labor dispute: any week of participation.

(*e*) Receiving benefits from another state: any week of receipt.

(*f*) Receiving veteran's unemployment benefits: ditto.

(*g*) Falsifying a claim for benefits: 1 year.

(*h*) Receiving workman's compensation: any week of receipt.

The two sections, read together, form a fairly consistent pattern. A person meeting all of the requirements of 44-705 is "eligible" for benefits, but if he fits any one of the categories of 44-706 he is "disqualified." The duration of the disqualification is dependent on its nature. The variations, we take it, represent a legislative judgment as to what is appropriate to foster the purpose of the act. That purpose is to protect against the economic hardships attendant on "involuntary unemployment." K. S. A. 44-702; *Southwestern Bell Tel. Co. v. Employment Security Board of Review,* 210 Kan. 403, 502 P. 2d 645; *Goodyear Tire & Rubber Co. v. Employment Security Board of Review,* 205 Kan. 279, 469 P. 2d 263, Syl. ¶ 1. Thus there runs through 44-706 the common thread of recognizing the *volition* of the claimant as a disqualifying factor, *e. g.,* as in the case of one who *refuses* to look for work or take it when offered. If he is "voluntarily" unemployed, he receives no benefits. In some instances this idea approaches the concept of "fault," as where the worker discharged for gross misconduct faces a more severe disqualification than one fired for ordinary breach of duty.

Claimant, as noted, was disqualified under K. S. A. 44-706 (*a*). That paragraph reaches two main groups, which for our purposes we have designated "I" and "II." In turn, group II encompasses four sub-groups. For convenience we have editorially inserted our numbers, brackets and parentheses into the paragraph:

"An individual shall be disqualified for benefits:

[I] For the week in which he left work voluntarily without good cause and for the six (6) consecutive weeks which immediately follow such week: [II] *Provided,* That if an individual leaves work by his own action [1] because of domestic or family responsibilities (not including pregnancy), [2] self-employment or [3] to retire because of disability or old age, or [4] to attend school, such individual shall be disqualified for benefits until he again becomes employed and has had earnings of at least eight (8) times his weekly benefit amount."

Under this paragraph group I consists of those who merely quit their jobs, "voluntarily without good cause," and for no particular reason. They are disqualified for the week they quit and the next six. After that they may start drawing benefits if they are still unemployed, and if they meet all the requirements of 44-705 such as actively seeking employment.

Members of group II may also be said to have left "voluntarily without good cause," *i. e.,* they have left by their "own action." They, however, must do more than merely endure a waiting period and seek employment; they must actually become employed and earn wages of at least eight times their benefits. The only reason for this separate treatment is their reason for quitting.

It is here that claimant makes her first assault on the statute's classifications. There is no justification, she says, for imposing greater disadvantages on those who have a good reason for quitting their jobs than on those who have none at all. Her argument is based on familiar equal protection principles, most recently restated by this court in *Henry v. Bauder,* 213 Kan. 751, 518 P. 2d 362:

"Under federal and Kansas equal protection constitutional provisions, a state statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purpose of the legislation."

"The constitutional principle of equal protection does not preclude the state from drawing distinctions between different groups of individuals, but does require that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (Syl. ¶¶ 1 and 2.)

Applying these principles, she says that if the purpose of the act is to protect against "involuntary" unemployment, then all who

are voluntarily unemployed should be treated alike. (This over-states her case, but we shall refine her argument in a moment.)

The board responds by saying that there *are* substantial differences among the voluntarily unemployed which justify different treatment. Prime among them is the "gross misconduct" versus simple "breach of duty" distinction of paragraph (*b*). In each case under that paragraph the worker's own conduct resulted in his unemployment, but different consequences flow from the differences in the character of that conduct.

As to those voluntarily unemployed under paragraph (*a*), the board differentiates our group I (those who quit for no reason) from group II (those who had a "good" reason) on the basis that the latter have not only quit, but have done so for reasons demonstrating that *they have withdrawn from the labor market.* This is the only reason advanced to justify the distinction, and the only one that occurs to us. Once a person has withdrawn, the board says, it is not unreasonable to require him to demonstrate that he has once again rejoined the labor market before becoming eligible for benefits. The requirement that he actually get a job and accrue minimum earnings is seen as a valid criterion for testing the *bona fides* of the worker's re-entry into the ranks of wage earners.

Claimant is willing to concede this point as a general principle, at least as it applies to those in the other three subclasses of group II. Thus, she says, a person who becomes self-employed, or who retires, or who quits to go to school, may well be deemed to have withdrawn from the labor market. And she also concedes that those who *have* withdrawn may properly be treated differently from those who have not.

What she does contend—and this is the main thrust of her argument—is that it cannot be conclusively presumed that a person who quits because of "domestic or family responsibilities" has withdrawn from the labor market. Such a presumption, she says, sweeps too broadly. It includes more than the woman who quits to become a full-time housewife, or to take care of a child or a sick husband; these, she concedes, may be said to have withdrawn. It goes further and, as applied in this case, encompasses the wife who moves to another city to accompany her husband *but who has no intention of withdrawing from the labor market.*

Such a wife, she says, should be treated no worse than a single woman who quits to seek greener pastures elsewhere, and certainly

no worse than one who moves to be with a fiance or paramour. In either of those cases the single woman would have her *disqualification* automatically removed at the end of the six-week waiting period. (Whether she would be *eligible* or not is another question.)

We believe her argument has merit. First, irrebuttable presumptions have heavy going in constitutional seas; the ones recently considered have all foundered. *Cleveland Board of Education v. LaFleur*, _____ U. S. _____, 39 L. Ed. 2d 52, 94 S. Ct. 791, 42 U. S. Law Week 4186 (January 21, 1974) (physical incapacity of a teacher who is either pregnant or has just borne a child); *Vlandis v. Kline*, 412 U. S. 441, 37 L. Ed. 2d 63, 93 S. Ct. 2230 (nonresidence for state university tuition purposes); *Stanley v. Illinois*, 405 U. S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (unfitness of father to have custody of an illegitimate child); *Carrington v. Rash.*, 380 U. S. 89, 13 L. Ed. 2d 675, 85 S. Ct. 775 (nonresidence of a serviceman for voting purposes).

Therefore, she cannot be irrebuttably presumed to have withdrawn from the labor market just because her reason for quitting was "because of domestic or family responsibilities."

Second, if she did *not* so withdraw, then there is no justification for treating her differently than other persons who leave work "voluntarily without good cause." Since withdrawal from the labor market is the only justification for creating the class which we have referred to as "group II," if she does not fall into that class in fact, she cannot be put there by legislative or administrative fiat.

Claimant's conclusion from the foregoing analysis is that the clasification and statute must be stricken down as unconstitutional. We do not agree. "The policy of courts is to uphold legislative intent rather than to defeat it, and if there is any reasonable way to construe legislation as constitutionally valid it will be so construed." *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P. 2d 981, Syl. ¶ 6. (And see cases cited therein, 211 Kan. at 787.)

We therefore search for a construction of the statute which will uphold both the legislative intent and the constitutionality of the statute. From what has been said it is apparent that such a construction is close at hand. The intent, both sides agree, is to put to the test only those who have withdrawn from the labor market; *i. e.*, it is only they who are required to again secure employment after they become disqualified. Since it is intended that withdrawal from the labor market be a condition of disqualification under "group

II," this intent may be easily effectuated by simply reading that condition into the statute.

Such a construction may, of course, require a somewhat more difficult administrative determination of a claimant's entitlement to benefits. In addition to fitting a claimant into one of the four subclasses in group II, it will also be necessary to determine whether the claimant's conduct in fact evinces an intent to withdraw from the labor market. In this case, for instance, the examiner found "As the claimant withdrew from the position she held in the labor market to fulfill her obligation to reside at the domicile of her husband's choosing, she left work because of her domestic or family responsibilities." It was on this basis, also, that the referee affirmed because "It is clear from claimant's own statements that she falls within the disqualification of the law *as it has been interpreted by this agency.*" (Emphasis added.) That will no longer be sufficient. What will be required administratively is a little further inquiry, such as in this case to determine whether the domestic or family responsibilities which caused claimant to quit, or her subsequent conduct, were of such a nature that she must in fact be deemed to have withdrawn. We do not regard this as an intolerable burden on those who must administer the act.

Neither do we regard such a result as an unwarranted rewriting of K. S. A. 44-706 (*a*). We have only recently demonstrated that the litmus test of that statute is not infallible, in *Southwestern Bell Tel. Co. v. Employment Security Board of Review,* supra. We held there that an employee who "retired," arguably because of "old age," was not disqualified where the retirement was the result of a mandatory age limit in a collective bargaining agreement. The case illustrates that the literal terms of the statute are not absolutely controlling in all circumstances.

Our examination of cases cited from other jurisdictions reveals that in them there is a split of authority as to whether workers who quit for reasons similar to claimant's do so with or without "good cause." That is not an issue here: claimant does not contend that her domestic responsibilities constituted "good cause" for quitting, only that she should be treated in the same manner as others who quit *without* good cause, but who continue to be attached to the labor market.

Our conclusion makes it unnecessary to consider claimant's argument about the alleged restriction on her right to travel. We note,

however, that her situation would have been the same had she followed her husband to Wichita instead of San Antonio.

There remains to be decided the proper disposition of this case. As of now there has been no determination of whether claimant in fact withdrew from the labor market. We have assumed she did not for the purposes of this decision, based on her statement that she "looked for work in Texas." Neither has there been a determination of her "eligibility" under 44-705. The agency's inquiry stopped once her reason for quitting had been ascertained; under the prevailing agency interpretation she was ipso facto disqualified and any further inquiry would have been irrelevant. The agency should now have an opportunity to determine whether claimant is eligible for benefits, whether she is disqualified under the standards set forth above, and if she is entitled to benefits, the amount thereof.

The judgment is reversed with directions to remand the case to the employment security board of review for further proceedings in accordance with this opinion.

APPROVED BY THE COURT.