No. 56,331

JOSEPHINE BURRISS, *Appellee*, v. NORTHERN ASSURANCE COMPANY OF AMERICA, *Appellant.*

(691 P.2d 10)

Opinion filed November 30, 1984.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *David K. Knowles,* of the same firm, was with him on the brief for appellant.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for appellee.

*L. M. Cornish* and *Richard Harmon,* of Glenn, Cornish, Hanson & Karns, Chartered, of Topeka, were on the brief for *amicus curiae* Kansas Association of Property and Casualty Insurance Companies, Inc.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Northern Assurance Company of America, from a judgment of the District Court of Johnson County, finding two provisions of the Kansas Automobile Injury Reparations Act, K.S.A. 40-3103(l) and (y), unconstitutional and entering judgment for the plaintiff, Josephine Burriss. The determinative question on appeal is the constitutionality of the statute.

The facts are not in dispute. Lloyd Burriss and his wife, Josephine Burriss, residents of Johnson County, were the named insureds in an automobile insurance policy issued by the defendant, Northern. The policy contained a personal injury protection (PIP) endorsement in compliance and in conformity with the Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 *et seq.* The insureds were not given the option to accept or reject the PIP endorsement; they were charged a premium for that

endorsement; the premium was not based upon their income or employment status. On October 11, 1982, while the policy was in force, Lloyd Burriss was killed when the motor vehicle which he was then operating was involved in a collision.

At the time of his death, Mr. Burriss was retired. He received monthly social security payments of $534 and monthly pension payments from a former employer of $153. The pension terminated upon his death, and the social security benefits were reduced to $51 per month. Plaintiff made demand upon Northern for payment of $636 per month for one year in survivor's benefits under the PIP endorsement. When payment was refused, she brought this suit.

The petition was framed in two counts. In the first, plaintiff contended that K.S.A. 40-3103(l) and (y) are unconstitutional in that they deny plaintiff due process and equal protection. In the second count, she sought to have the policy reformed to conform to the statute as construed by the court, and to recover survivor's benefits. The pertinent portions of the statute read as follows:

"40-3103. **Definitions.** As used in this act, the following words and phrases shall have the meanings respectively ascribed to them herein:  . . . .

.  .  .  .

"(l) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, one-twelfth (1/12) of the annual earnings at the time of injury; or (2) in the case of a person not regularly employed or self-employed, or of an unemployed person, one-twelfth (1/12) of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed. In calculating the anticipated annual earnings of an unemployed person who has previously been employed, the insurer shall average the annual compensation of such person for not to exceed five (5) years preceding the year of injury or death, during which such person was employed.

.  .  .  .

"(y) 'Survivors' benefits' means total allowances to all survivors for: (1) Loss of an injured person's monthly earnings after his or her death, up to a maximum of not less than six hundred fifty dollars ($650) per month; and (2) substitution benefits following the injured person's death. Expenses of the survivors which have been avoided by reason of the injured person's death shall be subtracted from the allowances to which survivors would otherwise be entitled, and survivors' benefits shall not be paid for more than one (1) year after the injured person's death, less the number of months the injured person received disability benefits prior to his or her death."

Defendant, in response, filed a motion for judgment on the pleadings pursuant to K.S.A. 60-212. It stated in the motion that "there are no material issues of fact between the parties." Plain-

tiff responded with a motion for summary judgment, supported by a memorandum and an affidavit reciting the facts. The trial court heard both motions, considered the memorandum and affidavit, and accepted as uncontroverted the facts set out in plaintiff's memorandum and affidavit. Since matters outside the pleadings were presented and considered, the court treated the defendant's motion as one for summary judgment. K.S.A. 60-212(c). In a carefully prepared memorandum decision, the trial court overruled defendant's motion, sustained that of the plaintiff, and entered judgment accordingly. Defendant appeals.

The constitutionality of the Kansas Automobile Injury Reparations Act has been challenged before, although not upon identical grounds. We reviewed at length the various provisions of the act, and the principles to be applied when a statute is challenged on equal protection and due process grounds, in *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291 (1974). We quoted Section 2 of the act, K.S.A. 40-3102, which reads:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."

We then said:

"This is the heart of the Act. The rest treats of details and procedures. The legislation forms the basis for a different approach in solving the inadequacies of the tort liability system, and provides a new method of affording prompt compensation to motor vehicle accident victims. Under the declaration of Section 2 and other provisions of the Act, we now approach reparation of motor vehicle accident victims on the basis of the interest of all the citizens of this state without losing sight of, but tempering, the right of an individual to pursue traditional remedies in tort. The change is an appropriate one for the Legislature to make. . . .

"It is evident the Legislature was concerned with the possible burden on society occasioned by inadequate or nonexistent compensation for economic loss suffered by motor vehicle accident victims, particularly when viewed in the context of the large number of persons and total financial loss involved. By requiring motor vehicle liability policies to include first party PIP benefits, the Legislature may have eliminated the former necessity of resorting to litigation in many cases. The requirement of PIP coverage bears a reasonable relation to the subject of reparation for losses arising out of the ownership and operation of motor vehicles. Hence, the Kansas no-fault insurance plan being reasonably directed toward problems that affect the public welfare, including the economic

welfare of the state and its citizens, the Act represents a proper and legitimate exercise of the police power of the state.

. . . .

"The plaintiff and intervenor have advanced several arguments premised upon a denial of equal protection of the law. Traditionally, the test utilized in determining if a legislative enactment violates equal protection principles is whether the classification bears a rational relation to the purpose of the legislation. (*Henry v. Bauder,* [213 Kan. 751, 518 P.2d 362 (1974)]; *Pinkerton v. Schwiethale,* [208 Kan. 596, 493 P.2d 200 (1972)]; *State v. Consumers Warehouse Market,* 183 Kan. 502, 329 P.2d 638; *McDonald v. Board of Election,* 394 U.S. 802, 22 L.Ed.2d 739, 89 S.Ct. 1404.) The Legislature is presumed to act within its constitutional power despite the fact the application of its laws may result in some inequity. (*McGowan v. Maryland,* 366 U.S. 420, 6 L.Ed.2d 393, 81 S.Ct. 1101.) The equal protection clause goes no further than to prohibit invidious discrimination. (*Williamson v. Lee Optical,* 348 U.S. 483, 99 L.Ed. 563, 75 S.Ct. 461.) In *Reed v. Reed,* 404 U.S. 71, 30 L.Ed.2d 225, 92 S.Ct. 251, it was said:

" '. . . [T]his Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. *Barbier v. Connolly,* 113 U.S. 27 (1885), *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61 (1911); *Railway Express Agency v. New York,* 336 U.S. 106 (1949); *McDonald v. Board of Election Commissioners,* 394 U.S. 802 (1969). The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920). . . .' (l.c. 75-76.)

. . . .

"An argument has been advanced challenging as a denial of equal protection the option given owners of motorcycles to reject in writing the coverage for personal injury protection benefits. . . .

"It should be noted that this court is not made the superintendent of legislative activity under principles of equal protection. (*Griswold v. Connecticut,* 381 U.S. 479, 14 L.Ed.2d 510, 85 S.Ct. 1678.) Equal protection principles do not restrain the normal exercise of governmental power, but only abuse in the exertion of such authority. The principle of equal protection is not offended against simply because the exercise of the power may result in some inequality. (*Louisville & Nashville R. R. v. Melton,* 218 U.S. 36, 54 L.Ed. 921, 30 S.Ct. 676.) There is no precise application of the rule of reasonableness in classifying, and equality permits many practical inequalities. There need not be an exact exclusion or inclusion of persons and things. (*Magoun v. Illinois Trust & Savings Bank,* 170 U.S. 283, 42 L.Ed. 1037, 18 S.Ct. 594.) The state enjoys a wide range of discretion in distinguishing, selecting, and classifying, and it is sufficient if a classification is practical and not palpably arbitrary. (*Orient Insurance Company v. Daggs,* 172 U.S. 557, 43 L.Ed. 552, 19 S.Ct. 281; *Shelton v. Phalen,* 214 Kan. 54, 519 P.2d 754; *State v. Weathers,* [205 Kan. 329, 469 P.2d 292 (1970)]; *Tri-State Hotel Co.*

*v. Londerholm,* 195 Kan. 748, 408 P.2d 877 [1965]; *Martin v. Davis,* 187 Kan. 473, 357 P.2d 782 [1960], app. dismissed 368 U.S. 25, 7 L.Ed.2d 5, 82 S.Ct. 1 [1961]; *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P.2d 530 [1948].) '. . . To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations. . . . What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to . . . judicial review. . . .' (*Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69, 70, 57 L.Ed. 730, 734, 33 S.Ct. 441, 443.)
. . . .

"In the areas of economic and social legislation, a statutory plan does not violate the equal protection clause merely because the classifications contained therein are imperfect. (*Village of Belle Terre v. Boraas,* 416 U.S. 1, 39 L.Ed.2d 797, 94 S.Ct. 1536, 42 L.W. 4475; *Jefferson v. Hackney,* 406 U.S. 535, 32 L.Ed.2d 285, 92 S.Ct. 1724.) Nor does the equal protection clause require a state 'to choose between attacking every aspect of a problem or not attacking the problem at all . . .' (*Dandridge v. Williams,* 397 U.S. 471, 487, 25 L.Ed.2d 491, 503, 90 S.Ct. 1153, 1162.) The foregoing principles were stated by Mr. Chief Justice Hughes in *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 81 L.Ed. 703, 57 S.Ct. 578:

'. . . This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulations to all cases which it might possibly reach. The legislature "is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest." If "the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." There is no "doctrinaire requirement" that the legislation should be couched in all embracing terms. (Citations.) . . .' (300 U.S. at 400, 81 L.Ed. at 703, 57 S.Ct. at 585, 586.)
In *Williamson v. Lee Optical,* supra, Mr. Justice Douglas said:
'. . . The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. *Evils in the same field may be of different dimensions and proportions, requiring different remedies.* Or so the legislature may think. (Citation.) *Or the reform may take one step at a time,* addressing itself to the phase of the problem which seems most acute to the legislative mind. (Citations.) *The legislature may select one phase of one field and apply a remedy there, neglecting the others.'* (348 U.S. at 489, 99 L.Ed. at 573, 75 S.Ct. at 465.) (Emphasis supplied.)" 214 Kan. at 608-610, 612-615.

We concluded that the challenged provisions of the Kansas Automobile Injury Reparations Act are not unconstitutional under the due process or equal protection clauses, or under any of the other provisions of the state or federal constitutions, and we upheld the act.

The same subsections of K.S.A. 40-3103 which are attacked as unconstitutional in this action were before the Court of Appeals

in *Bradley v. AID Insurance Co.*, 6 Kan. App. 2d 367, 629 P.2d 720, *rev. denied* 230 Kan. 817 (1981). One of the principal issues in that case was whether social security and retirement or pension benefits were to be utilized in computing survivors' benefits under K.S.A. 40-3103. The court held that they were not. Its ruling is clearly stated in Syllabus ¶ 1:

"Social security and teacher retirement benefits do not constitute monthly earnings as defined in K.S.A. 1980 Supp. 40-3103(*l*); and, consequently, do not qualify a survivor of the decedent for survivors' benefits under 40-3103(*y*)."

The Court of Appeals noted in the body of its opinion, p. 372, that "40-3103(*y*) and (*l*) by their terms are clearly limited to earnings from present or reasonably expected future employment." The court did not determine the constitutionality of those sections. It said:

"Plaintiff's argument concerning the discriminating effect of such a holding has some merit; however, insofar as this argument attacks the constitutionality of the act, it is presented for the first time on appeal and then only peripherally. While the latter might not always prevent consideration, *State v. Nelson,* 210 Kan. 439, Syl. ¶ 4, 502 P.2d 841 (1972), we believe the issue should not be addressed at this time." 6 Kan. App. 2d at 372.

The no-fault act as a whole, as we held in *Manzanares*, has a legitimate purpose: to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles, providing PIP coverage and benefits to insure prompt payment for loss and to avoid the necessity and delay of litigation. With limited exceptions, every owner of a motor vehicle operated upon Kansas highways is required to insure the vehicle against liability, and liability insurance policies are required to contain provisions for PIP coverage. See K.S.A. 40-3104 and -3107, as amended. Personal injury protection (PIP) benefits are defined in K.S.A. 40-3103(q) as:

"[T]he disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits and survivors' benefits required to be provided in motor vehicle liability insurance policies pursuant to this act."

PIP benefits are extended under the required policy provisions to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in the motor vehicle, and other persons struck by the vehicle and suffering bodily injury while not an occupant of a motor vehicle.

K.S.A. 40-3107, as amended by Laws of Kansas, 1984, chapter 175, section 1. Funeral, medical, rehabilitation, and substitution benefits are payable regardless of the income or employment of the injured person. Disability and survivors' benefits, however, are computed upon the basis of the injured or deceased person's loss of monthly earnings. K.S.A. 40-3103(b) and (y). Survivors of deceased persons who have had no monthly earnings are not entitled, under the act, to survivors' benefits. It is this distinction that plaintiff attacks.

Does the act deprive plaintiff of property without due process of law, or does it deny her the equal protection of the law? This is the narrow issue before us. We turn, then, to the tests which must be applied in order to determine whether a law denies due process or equal protection. In *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 30, 643 P.2d 87 (1982), we discussed the tests, quoting from Justice Owsley's opinion in *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 614, 616, 576 P.2d 221 (1978):

" '[T]he test for due process . . . [is] whether the legislative means selected had a real and substantial relation to the objective sought. The rule has been restated in terms of whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community. (*West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 81 L.Ed. 703, 57 S.Ct. 578, 108 A.L.R. 1330.)

. . . .

" 'Our next concern is whether the statute offends the equal protection clause. When considering this question we must first determine the proper test. Traditionally, the yardstick for measuring equal protection arguments has been the "reasonable basis" test. The standard was set forth in *McGowan v. Maryland*, 366 U.S. 420, 425-26, 6 L.Ed.2d 393, 81 S.Ct. 1101:

" ' ". . . The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . ."

" 'In *Dandridge v. Williams*, 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153, reh. denied 398 U.S. 914, 26 L.Ed.2d 80, 90 S.Ct. 1684, it was stated:

" ' ". . . If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78. . . ." (p. 485.)

" 'A statute comes before the court cloaked in a presumption of constitutionality and it is the duty of the one attacking the statute to sustain the burden of proof. (*Henry v. Bauder*, 213 Kan. 751, 753, 518 P.2d 362; *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P.2d 877; *Lindsley v. Natural Carbonic Gas*

Co., 220 U.S. 61, 78-79, 55 L.Ed. 369, 31 S.Ct. 337.)' 223 Kan. at 614, 616."
*Manhattan Buildings Inc.*, 231 Kan. at 30.

See also *Strehlow v. Kansas State Board of Agriculture*, 232 Kan. 589, 593, 659 P.2d 785 (1983), and *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 519, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983).

Under these rules, it appears that the reasonable basis test is the yardstick under which the statute must be measured, both as to equal protection and as to due process. Is there a reasonable basis for the distinction between wage earners and nonwage earners? Throughout the history of this state, the protection of wages and wage earners has been a principal objective of many of our laws. See, for example, K.S.A. 60-2307, originally enacted as G. S. 1868, ch. 38, § 6, providing that otherwise exempt personal property shall not be exempt from attachment or execution for wages; K.S.A. 44-312, enacted in 1901, giving preference to the payment of wages in the case of receiverships or assignments for the benefit of creditors; the statute restricting garnishment of wages, K.S.A. 60-2310, which reflects the rationale of G. S. 1868, ch. 80, § 490; and the wage payment act, K.S.A. 44-313 *et seq.*, enacted in 1973. K.S.A. 40-3103, like the statutes mentioned above, gives preference to wage earners, in order that they and the families dependent upon them are not destitute. When it enacted K.S.A. 40-3103, the legislature could have included pensions, retirement income, payments from life estates, annuities and lifetime trusts, alimony, and other forms of income as "monthly earnings," but it chose not to do so. It distinguished between those persons who are employed or self-employed, on the one hand, and those who are not, on the other. It determined in substance that all Kansas motor vehicle owners must carry insurance to defray a measure of the loss sustained by wage earners or other employed persons upon their injury or sustained by their survivors upon their death, whether as drivers or passengers or as pedestrians, where the injury or death is caused by motor vehicles. It did not require that such coverage be carried to protect the nonemployed or their survivors. The legislature thus continued its long-standing policy to protect employed persons and their survivors. "Survivor" is defined by subsection (x) as "a decedent's spouse or child under the age of eighteen (18) years, where death of the decedent resulted from [a motor vehicle-related] injury."

Social security and pension benefits are easily computed, as the trial court pointed out, and dependents of persons receiving such benefits may suffer losses just as devastating as may survivors of employed persons. The legislature, however, has determined to include only employed persons, not those receiving income from other sources, though terminable or reducible upon injury or death. The legislature did not simply distinguish between employed persons and those receiving social security or retirement benefits; it made a broad distinction between those who are employed and those who are not. It sought to protect wage earners and those dependent upon them. Such persons sustain an immediate loss when wages or self-employed income is interrupted or terminated. Many nonemployed persons do not sustain the same loss. Extending the same protection to all persons injured in motor vehicle collisions would greatly increase the coverage and thus increase the cost of the insurance program. We cannot say that all persons must be included; that is a legislative and not a judicial determination.

We conclude and hold that the legislative classification rests upon reasonable grounds and furthers the legislature's objective of protecting those who are earning income, and their dependents or survivors. We further hold that the classification does not offend the equal protection or due process clauses of the United States Constitution. Plaintiff makes a persuasive argument that people dependent upon pensions, and their survivors, should be protected by PIP coverage; and the facts of this case demonstrate the loss that dependents of such a person may sustain. That argument, however, is best addressed to the legislature and not to the courts.

At the time the motions for summary judgment were argued in the trial court, there were no disputed issues of fact raised by either party, and no fact issues are now suggested which would affect the final outcome of the case. Consideration of the summary judgment motions by the trial court was not premature. The policy of insurance does not need reformation since we have determined the principal issue adversely to plaintiff, who sought the reformation. Finally, since plaintiff as a policyholder does not prevail, plaintiff is not entitled to the allowance of attorney fees.

The judgment is reversed.