(837 P.2d 1322)

No. 67,629

CHURCHILL TRUCK LINES, INC., *Appellant,* v. DEPARTMENT OF HUMAN RESOURCES, EMPLOYMENT SECURITY BOARD OF REVIEW, *Appellee.*

Opinion filed July 24, 1992.

*Scott M. Mann, Frank W. Taylor, Jr.,* and *Alex M. Lewandowski,* of Dysart Taylor Penner Lay & Lewandowski, P.C., of Kansas City, Missouri, for appellant.

*James R. McEntire,* of Topeka, for appellee.

Before BRAZIL, P.J., ELLIOTT, J., and JOHN J. BUKATY, JR., District Judge, assigned.

BRAZIL, J.: Churchill Truck Lines, Inc., (Churchill) appeals from a memorandum decision and order by the district court that affirmed a ruling by the Employment Security Board of Review of the Kansas Department of Human Resources (Board of Review). The Board of Review ruled that the claimant, David Thurston, was eligible for unemployment benefits pursuant to K.S.A. 1991 Supp. 44-706(a)(11), although he had voluntarily resigned. We affirm.

When Thurston was hired by Churchill, he and his family resided in Fort Scott, Kansas. Thurston began working in December 1989 as the director of maintenance for Churchill in Chillicothe, Missouri. For a while, Thurston lived in a motel in Chillicothe and maintained his residence in Fort Scott; eventually, he moved his family to Chillicothe.

Thurston's wife and daughter had serious problems adjusting to life in Chillicothe. His daughter had trouble adjusting to her new school, and her grades fell from A's and B's to D's and F's. The daughter talked with a school counselor, but the problems continued.

Thurston's wife wanted to move back to Fort Scott, where she and her husband had lived most of their lives. Thurston talked to Kenneth Churchill in April 1990 about his family problems. At one point, Thurston came home one evening and his wife told him she had rented a truck and that she wanted him to take her back to Fort Scott. Thurston believed that the only way to "salvage [his] marriage" was to quit his job and move back to Fort Scott.

In June 1990, Thurston advised Churchill that he was terminating his employment. Churchill asked Thurston if he could stay on long enough for the company to hire a replacement, and Thurston agreed to do so. He stayed with Churchill until August 1990, when a replacement was hired. Thurston had another job lined up in the Fort Scott area but lost it due to the wait from June until August. The parties do not dispute that Thurston voluntarily quit his job with Churchill.

A hearing examiner concluded that Thurston was not entitled to unemployment benefits because his move "was for personal reasons only, and not for a personal emergency. [Thurston] left

work without good cause attributable to the work or the employer." Thurston appealed to a referee, who reversed the examiner's determination and allowed Thurston benefits.

The referee based his decision on K.S.A. 1991 Supp. 44-706(a)(11), which prevents an employee who voluntarily resigns from being disqualified from benefits if the employee had a personal emergency that forced his termination.

"The referee can think of no reason more compelling than preserving one's marriage and family as a reason for separating from employment. In this case the claimant was faced with the fact of losing his family in order to maintain employment with this employer. The problems confronting the claimant were real and he dealt with them the best way that he could. Under these circumstances the claimant would not be subject to disqualification as he quit his employment for a compelling personal emergency. It would be contrary to good conscience to impose a disqualification on the claimant as a result of his separation. The examiner's determination will be reversed."

The referee's decision was later affirmed by the Board of Review. Churchill filed a petition for review in the district court.

The district court, in a memorandum decision, affirmed the agency's action, stating that "[a]fter a review of the administrative record, the Court is unable to conclude that the Board erroneously interpreted or applied the provisions of K.S.A. 44-706(a)(11) in granting benefits to the claimant."

The scope of review of action by an administrative agency is somewhat limited. K.S.A. 77-621(c) sets forth eight grounds upon which the district court can grant relief from agency action. The relevant portions of the statute are as follows:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . .

(4) the agency has erroneously interpreted or applied the law;

. . .

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

K.S.A. 77-621(a)(1) provides: "The burden of proving the invalidity of agency action is on the party asserting invalidity." "Where the trial court has made findings of fact and conclusions of law, the appellate court must determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of

law." *Vakas v. Kansas Bd. of Healing Arts,* 248 Kan. 589, 604, 808 P.2d 1355 (1991).

Churchill claims that the agency erroneously interpreted and misapplied K.S.A. 1991 Supp. 44-706(a)(11) to the facts in the present case. The relevant portions of K.S.A. 1991 Supp. 44-706 provide as follows:

"An individual shall be disqualified for benefits:

"(a) If the individual left work voluntarily without good cause attributable to the work or the employer, subject to the other provisions of this subsection (a). . . . An individual shall not be disqualified under this subsection (a) if:

. . .

"(11) after making reasonable efforts to preserve the work, the individual left work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification."

The entire statute was significantly amended at L. 1985, ch. 176, § 2. Prior to the amendment, the statute provided: "An individual shall be disqualified for benefits . . . [i]f an individual leaves work by the individual's own action because of domestic or family responsibilities." K.S.A. 1984 Supp. 44-706(a)(2). The domestic or family responsibilities disqualification was specifically removed by the legislature by the 1985 amendments, which added subsection (a)(11).

Churchill cites two cases in which the Supreme Court addressed similar claims for unemployment compensation. See *Yunos v. Employment Security Board of Review,* 225 Kan. 813, 594 P.2d 230 (1979); *Shelton v. Phalen,* 214 Kan. 54, 519 P.2d 754 (1974). In *Yunos,* the court applied and upheld the disqualification for domestic reasons in the prior version of 44-706(a) based upon the plain language of the statute. 225 Kan. at 814-15. *Yunos* is of no help to the present matter because the disqualification for domestic reasons has been removed from the present version of the statute.

In *Shelton,* the court interpreted a part of the prior version of 44-706(a) that placed a greater period of disqualification upon a claimant who terminated her employment for domestic reasons rather than for no apparent reason. 214 Kan. at 57-58. Like *Yunos,* *Shelton* also has no relevance to the present matter.

K.S.A. 1991 Supp. 44-706(a)(11) has not yet been addressed by a Kansas appellate court. "The interpretation of a statute is a question of law and it is our function to interpret the statute to give it the intended effect. [Citation omitted.] The administrative interpretation of a statute will be given consideration and effect, but the final construction of a statute rests with the courts." *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources*, 247 Kan. 519, 524, 802 P.2d 516 (1990).

Subsection (a)(11) has two elements: (1) the employee has made reasonable efforts to preserve the work, and (2) there exists a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification. Churchill claims that the agency misinterpreted the intention of the legislature in adopting subsection (11) to include the "dissatisfaction" of a spouse as a personal emergency. Churchill argues that, although the legislature removed the automatic disqualification for terminating work because of domestic responsibilities, it was not the intention of the legislature to allow unemployment benefits to an employee who voluntarily terminates his employment based upon his spouse's desire to move their residence.

Without the benefit of prior case law or legislative history, this court is left with the plain language of the statute. "The fundamental rule of statutory construction is that the intent of the legislature governs. When construing a statute, we should give words in common usage their natural and ordinary meaning." *State ex rel. Secretary of SRS v. Clear*, 248 Kan. 109, 116, 804 P.2d 961 (1991). The language in K.S.A. 1991 Supp. 44-706(a)(11) is fairly broad; clearly the legislature could not anticipate every possible "personal emergency" which might arise, leaving room for agency discretion. Each case will have to be examined and evaluated on its own facts.

In *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991), the Supreme Court recently discussed interpretation of statutes by agencies.

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. Further, if there is a rational basis for the agency's interpretation, it should

be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts."

"Erroneous" is defined as "deviating from what is true, correct, right, or wise" or "fallacious, mistaken, inaccurate." Webster's Third New International Dictionary 772 (1971).

Based on the lack of authority in this area, it cannot be said that the agency erroneously interpreted K.S.A. 1991 Supp. 44-706(a)(11) as a matter of law based upon the facts in the present case. The record also clearly reflects that Thurston did what he could to preserve his employment. Based upon the broad language of the statute, it is difficult to say that the agency misinterpreted its provisions. The preservation of an employee's marriage and family serves as a rational basis for the agency's interpretation of the statute.

Churchill also argues that the agency acted unreasonably, arbitrarily, and capriciously in ruling that the facts of this case brought Thurston within the scope of the exception in K.S.A. 1991 Supp. 44-706(a)(11).

"K.S.A. 77-621(c)(8) provides that agency action must be set aside if it 'is otherwise unreasonable, arbitrary or capricious.' Unreasonable action has been defined as action taken without regard to the benefit or harm to all interested parties. [Citation omitted.] In determining whether an agency acted arbitrarily or capriciously, this court is limited to determining whether a particular action should have been taken or is justified, such as the reasonableness of the agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact. [Citation omitted.] As previously noted, arbitrary or capricious· conduct may be shown where an administrative order is not supported by substantial evidence." *Vakas v. Kansas Bd. of Healing Arts,* 248 Kan. at 604.

See *Kansas Racing Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 365, 770 P.2d 423 (1989); *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 381, 673 P.2d 1126 (1983).

The district court found as follows:

"There appears to be no contention that the respondent's decision in this case was fraudulent, arbitrary or capricious and it is clear that the Board of Review was acting within the scope of its authority. The Board's conclusion to the effect that the claimant was presented with a 'personal emergency'

requiring him to terminate his employment appears to be supported by substantial competent evidence."

Churchill claims that both the agency and the district court ignored the first element of K.S.A. 1991 Supp. 44-706 (a)(11) (employee made reasonable efforts to preserve the work) and that the agency made a "quantum leap" in assuming the dissatisfaction of Thurston's spouse was a personal emergency. Neither the referee nor the district court expressly referred to Thurston's efforts to preserve his employment, but this element is fully supported by the record of the hearing.

Based on the facts of this case, it cannot be said that the agency's action was unjustified or without foundation in fact.

Affirmed.