No. 120,214

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAAC LOUIS LITTLE,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Equal Protection Clause requires that all who are similarly situated be treated alike under the law.

2.

A party claiming an equal-protection violation has to show that he or she is similarly situated to members of a class receiving different treatment. When determining whether groups are similarly situated, a court must consider any legitimate purposes of the classification.

3.

Those convicted of sexually violent crimes are subject to lifetime supervision on release from prison because of the high risk of recidivism for that class of offenders. In light of the purpose of the lifetime-supervision requirement, those offenders are not similarly situated to those convicted of other serious, but not sexually violent, crimes when considering whether imposing lifetime supervision on sexually violent offenders violates equal protection.

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 12, 2020. Affirmed.

*Angela M. Davidson*, of Wyatt & Sullivan, LLC, of Salina, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD BURGER, C.J., LEBEN and SCHROEDER, JJ.

LEBEN, J.: Convicted of rape, aggravated criminal sodomy, and other offenses, Isaac Little appeals one part of the sentence he received—lifetime supervision when he's released after serving his prison sentence. Although Kansas law requires lifetime supervision on convictions for sexually violent crimes, Little argues that giving him lifetime supervision violates his constitutional right to equal protection of the law because others who commit serious crimes, like murder, aren't subject to lifetime supervision.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." That's essentially a direction that similarly situated people be treated alike. But it only applies to those who really are similarly situated in light of the purpose of the governmental provision that's involved.

Here, we have a lifetime postrelease supervision provision for people convicted of sexually violent crimes. Its purpose is obvious: sexually violent offenders have higher recidivism rates and therefore need greater supervision after release. With that purpose in mind, those convicted of other crimes aren't similarly situated. Little has not shown a violation of his constitutional rights, and we affirm the district court's judgment.

2

With that overview, let's look more carefully at Little's case and the claim he makes in this appeal.

Little was part of a group of masked men who forced their way at gunpoint into a couple's home in Wichita in May 2009. The couple lived there with their small children. The man who lived there sold marijuana from time to time, and the invaders demanded money or drugs. But the couple said they had none and asked the men to leave. Instead, the invaders tore the house apart, shot the man several times, and raped and sodomized the woman. After a weeklong trial, a jury convicted Little—as either a principal actor or an aider and abettor—of attempted second-degree murder, rape, aggravated criminal sodomy, kidnapping, aggravated burglary, criminal threat, aggravated battery, and aggravated robbery. See *State v. Little*, No. 104,794, 2012 WL 3000342, at *1 (Kan. App. 2012) (unpublished opinion).

The convictions for rape and aggravated sodomy are the significant ones in this appeal. That's because they triggered a requirement that if Little is one day released from prison—he's now serving a 330-month sentence—he will be under lifetime supervision. See K.S.A. 2008 Supp. 22-3717(d)(1)(G). (We're citing to the statute that was in place when Little committed his offenses since it applies to him. A similar statute remains in place today.) Little argues that lifetime postrelease supervision violates his right to equal protection of the law under the Equal Protection Clause of the Fourteenth Amendment.

Both the United States Supreme Court and the Kansas Supreme Court have interpreted the Equal Protection Clause to mean that all who are similarly situated be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005). So the first hurdle someone claiming an equal-protection violation must clear is the showing that he or she is similarly situated to people who are treated differently under the

law. *State v. LaPointe*, 309 Kan. 299, Syl. ¶ 6, 434 P.3d 850 (2019). Here, Little cannot clear that initial hurdle.

To see why, we must talk a bit about how to determine whether two groups are similarly situated. The party claiming an equal-protection violation has the burden to show a violation, and that includes showing that he or she is similarly situated to members of a class receiving different treatment. 309 Kan. 299, Syl. ¶ 6. Given that burden, it's not surprising that the complaining party gets to define the groups being compared for differing treatment. *State v. Salas*, 289 Kan. 245, 249, 210 P.3d 635 (2009).

Little has done that. He compares two groups: (1) those convicted of serious sexual offenses, who get lifetime postrelease supervision, and (2) those convicted of other very serious crimes, like murder, who do not get lifetime postrelease supervision. As defined, the two groups are treated differently.

But to determine whether there's anything wrong with treating them differently, we must first determine whether they are similarly situated. And that task doesn't take place based solely on what the party challenging the law may argue.

Instead, that task takes place in a larger context: the basic question at issue in all equal-protection cases is whether the government's classification is justified by a sufficient purpose. Chemerinsky, Constitutional Law: Principles and Policies 725 (6th ed. 2019). And it's the *government's* purpose that's at issue—is it sufficient to justify the classification?

In looking for the government's purpose, we look to see whether there is some legitimate objective the Legislature might have had—it need not have been specifically identified in the legislative enactment. See *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S. Ct. 453, 66 L. Ed. 2d 368 (1980); *Barrett ex rel. Barrett v. U.S.D.*

4

*No. 259*, 272 Kan. 250, 256, 32 P.3d 1156 (2001). So our first task—determining whether two groups are similarly situated—must be guided by the potential lawful purposes of the classification. See *State v. Cheeks*, 298 Kan. 1, 6, 310 P.3d 346 (2013) (noting that the "purpose of the law" is "the proper focus of a similarly situated inquiry"), *overruled on other grounds by State v. LaPointe*, 309 Kan. 299, 434 P.3d 850 (2019); *Ernest v. Faler*, 237 Kan. 125, 130, 697 P.2d 870 (1985) (noting that "persons similarly situated with respect to the legitimate purpose of the law [must] receive like treatment"); *Shelton v. Phalen*, 214 Kan. 54, Syl. ¶ 2, 519 P.2d 754 (1974) (same); Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure § 18.2(a), pp. 312-13 (5th ed. 2012) ("Usually, one must look to the end or purpose of the legislation in order to determine whether persons are similarly situated . . . .").

If we find that the groups treated differently are similarly situated, we then must determine whether the classification is sufficiently justified by the lawful purpose. We require a sufficient connection between that lawful governmental purpose and the classification. See *LaPointe*, 309 Kan. 299, Syl. ¶ 5.

Since we judge similarity based on the government's purpose in the classification, we must start our analysis of Little's claim by looking to see what the lawful purpose of this classification—making lifetime supervision applicable to serious sexual offenders—might be. Figuring that out isn't hard. In upholding the lifetime-supervision requirement against a claim that it was unconstitutionally cruel punishment, the Kansas Supreme Court noted the appropriateness of concerns about the uniquely high rate of recidivism for convicted sex offenders. *State v. Mossman*, 294 Kan. 901, 909-10, 281 P.3d 153 (2012); see also *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Our Supreme Court has also noted that lifetime supervision fosters rehabilitation of sex offenders while also keeping a watchful eye in light of the high potential to reoffend. *State v. Williams*, 298 Kan. 1075, 1088-89, 319 P.3d 528 (2014).

With those purposes in mind, the classification Little complains about doesn't compare similar groups. One group consists of the worst sexual offenders, and there's a special risk of recidivism for that group. The other group simply committed a variety of otherwise serious crimes. Because Little has not shown that the groups are similarly situated in the light of the government's purpose, we hold that Little has not shown an equal-protection violation here. Our holding today is in line with a decision from the United States Court of Appeals for the Tenth Circuit and an unpublished decision from our court. See *Carney v. Oklahoma Dept. of Public Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017); *State v. Pjesky*, No. 119,256, 2019 WL 1976466, at *2-3 (Kan. App.) (unpublished opinion), *rev. denied* 311 Kan. ___ (December 31, 2019).

In his appellate brief, Little cited to two cases dealing with access to DNA testing. A Kansas statute, K.S.A. 21-2512, offers postconviction DNA testing only to those convicted of first-degree murder or rape. In two cases, Kansas appellate courts found an equal-protection violation when postconviction testing wasn't also made available to those convicted of second-degree murder, *Cheeks*, 298 Kan. at 11, and aggravated indecent liberties with a child, *State v. Kelsey*, 51 Kan. App. 2d 819, 829, 356 P.3d 414 (2015). Little argues that imposing lifetime supervision only for sexually violent offenses similarly violates equal protection.

The State says that we should reject that argument since *Cheeks* was overruled in *LaPointe*, 309 Kan. at 854, and *Kelsey* was based on *Cheeks. Kelsey*, 51 Kan. App. 2d at 421. But even if *Cheeks* had not been overruled, that wouldn't affect the result here. The purpose of the statute providing postconviction DNA testing was "to provide an opportunity for exoneration to innocent individuals convicted of severe crimes." *Cheeks*, 298 Kan. at 6. Arguably, in light of that purpose, defendants convicted of similarly serious offenses would be similarly situated. In our case, though, the purpose of the lifetime-supervision provision is uniquely applicable to sexually violent offenders. So Little cannot show similarity based merely on the serious nature of other offenses.

6

We recognize that some have criticized the method of equal-protection analysis that starts with the threshold question of whether the groups are similarly situated. The critics suggest that this makes it too easy to uphold a statute since the court never directly measures the fit between the statute's lawful purpose and the challenged classification. See *State v. Hibler*, 302 Neb. 325, 356, 923 N.W.2d 398 (2019) (Stacy, J., concurring) (suggesting that ending analysis at the threshold similarity question "insulate[s] the challenged classification from any meaningful equal protection review"); Shay, *Similarly Situated*, 18 Geo. Mason L. Rev. 581 (2011) (arguing against the use of similarity as a threshold question that ends the analysis if groups aren't sufficiently similar). We are not free to ignore the similarity test as a threshold question; that's the rule that has been stated by the Kansas Supreme Court as recently as 2019. See *LaPointe*, 309 Kan. 299, Syl. ¶ 5. It's also the rule applied by the Tenth Circuit. See *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018); *Carney*, 875 F.3d at 1353.

We are confident, though, that the application of the similarity threshold inquiry in this case does not lead to any failure to correctly apply equal-protection principles for two reasons. First, we made sure that there was a lawful governmental purpose to the classification; we then used that lawful purpose to determine whether the groups were similarly situated. Second, Little has not shown that any level of review higher than rational-basis review (the least stringent that could be used) would be applied here to determine whether the fit between the governmental purpose and the means used (the classification) was sufficient to justify it. In this situation, we have essentially infused the similarity inquiry with enough of the full analysis to make sure we have adequately addressed the issue. See 18 Geo. Mason L. Rev. at 623-24.

Little makes a brief mention of the equal-protection provisions of the Kansas Constitution Bill of Rights. But his statement of the issue in this appeal claims only that lifetime postrelease supervision violates the Equal Protection Clause of the Fourteenth

Amendment, and he does not argue that the Kansas provisions give him any greater protection than the Equal Protection Clause. Accordingly, we will not consider any potential claim under the Kansas provisions. See *Scribner v. U.S.D. No. 492*, 308 Kan. 254, 262, 419 P.3d 1149 (2018) (declining to consider whether Kansas constitutional provisions on equal protection provide greater protection than federal counterparts in the absence of a party's argument that they do).

We affirm the district court's judgment.