(844 P.2d 41)

No. 68,085

DONNA K. ROBERTS DANNENFELSER, *Appellee*, v. EMPLOYMENT SECURITY BOARD OF REVIEW, *Appellant*.

Opinion filed December 23, 1992.

*James R. McEntire*, of Topeka, for the appellant.

*Melvin M. Gradert*, of Hillsboro, for the appellee.

Before BRISCOE, C.J., GERNON, J., and RICHARD A. MEDLEY, District Judge, assigned.

BRISCOE, C.J.: The Kansas Employment Security Board of Review (Board) appeals the district court's decision granting unemployment benefits to Donna K. (Roberts) Dannenfelser. By

granting benefits, the district court reversed the Board's decision. The Board had concluded Dannenfelser was disqualified from receiving unemployment benefits because she voluntarily terminated her employment without good cause attributable to her employment. It is undisputed that Dannenfelser voluntarily terminated her employment with the National Council on Alcoholism (Council) to move to another city to get married. The sole issue presented is whether her reason for terminating employment constituted a personal emergency under K.S.A. 1991 Supp. 44-706(a)(11) which would relieve her from disqualification for receipt of unemployment benefits.

Dannenfelser was employed by the Council from September 21, 1983, to August 29, 1990. According to Dannenfelser, she voluntarily left that position in Topeka, Kansas, to move 106 miles to Florence, Kansas, to get married. When asked, Dannenfelser did not elaborate on her reasons for leaving her employment and did not offer additional or different reasons for her actions.

K.S.A. 1991 Supp. 44-706 provides that an individual shall be disqualified for benefits "(a) [i]f the individual left work voluntarily without good cause attributable to the work or the employer." There are exceptions to this rule, however. An individual will not be disqualified if "after making reasonable efforts to preserve the work, the individual left work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification." K.S.A. 1991 Supp. 44-706(a)(11). In the present case, the question of whether Dannenfelser made a reasonable effort to preserve her position has not been addressed. Instead, the parties have focused upon the question of whether Dannenfelser's impending marriage was a "personal emergency of such nature and compelling urgency" under 44-706(a)(11) to relieve her from disqualification for receipt of unemployment benefits.

Whether Dannenfelser was entitled to unemployment benefits had been the subject of three levels of administrative review within the Kansas Department of Human Resources prior to reaching the district court. Initially, the examiner held that Dannenfelser's move was for personal reasons only and not the result of a personal emergency. The examiner applied 44-706 to disqualify Dannenfelser from receiving benefits because she left her

employment "voluntarily without good cause attributable to the work or the employer." The referee reversed the examiner, finding Dannenfelser had no reasonable alternative available and, therefore, her move was the result of a "compelling personal emergency." The Board reversed the referee's decision, finding that termination for the purpose of marriage "does not constitute a personal emergency of such compelling nature that it would be contrary to good conscience to impose a disqualification."

On appeal, the district court reversed the Board's decision, finding Dannenfelser's impending marriage was a personal emergency which would satisfy the exception to disqualification for receipt of benefits in 44-706(a)(11). The court noted 44-706(a)(4) provides that an individual will not be disqualified from receiving benefits if "the individual left work because of the voluntary or involuntary transfer of the individual's spouse from one job to another job, which is for the same employer or for a different employer, at a geographic location which makes it unreasonable for the individual to continue work at the individual's job." The court concluded that, by the enactment of this provision, the legislature intended to preserve families. The court likewise concluded 44-706(a)(11) should be interpreted to encourage the creation of families. As Dannenfelser's spouse was permanently located 106 miles away from Dannenfelser's place of employment, the court concluded she could not reasonably form a family with her new spouse and retain her position with the Council. The court stated the phrase "personal emergency" in 44-706(a)(11) indicates that the "emergency" intended is not necessarily that associated with firetrucks or ambulances. As a result, the district court held the Board erroneously interpreted 44-706(a)(11) by interpreting the statute too narrowly.

"The interpretation of a statute is a question of law and it is our function to interpret the statute to give it the intended effect. [Citation omitted.] The administrative interpretation of a statute will be given conideration and effect, but the final construction of a statute rests with the courts." *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources,* 247 Kan. 519, 524, 802 P.2d 516 (1990).

When interpreting statutes, courts are to give statutes the effect intended by the legislature. *White v. VinZant,* 13 Kan. App. 2d

467, 471, 773 P.2d 1169 (1989). The legislature is presumed to have understood the meaning of the words it used and used the words in their ordinary and common meaning. *Rogers v. Shanahan,* 221 Kan. 221, 223-24, 565 P.2d 1384 (1976). Therefore, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny,* 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). "A court has no right to enlarge the scope of the statute or to amend it by judicial interpretation." *Coe v. Security National Ins. Co.,* 228 Kan. 624, 629, 620 P.2d 1108 (1980).

Through amendments to 44-706, the legislature has shown it is sympathetic to the needs of families. The entire statute was amended in 1985, *eliminating* the provision that an individual shall be disqualified for benefits "[i]f an individual leaves work by the individual's own action because of domestic and family responsibilities." K.S.A. 1984 Supp. 44-706(a)(2). The 1985 amendment also added the provision relied upon by the district court, 44-706(a)(4).

Despite the foregoing, the language of the statute at issue here, 44-706(a)(11), is clear—it requires an emergency. "Emergency" has consistently been defined to refer to situations that are unexpected and require immediate action. The statutes do not provide a relevant definition of the term, but Kansas case law has defined "emergency" in the context of tort law as "an unforeseen combination of circumstances which calls for immediate action." *Trinity Universal Ins. Co. v. Farmers Co-operative Exchange of Morland,* 171 Kan. 501, Syl. ¶ 1, 233 P.2d 468 (1951). Black's Law Dictionary 522-23 (6th ed. 1990) provides that an emergency is "[a] sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity."

In addition to the above definitions, the Board cites case law from other jurisdictions which provides similar definitions. See, *e.g., People v. Kelly,* 195 Cal. App. 2d 669, 678, 16 Cal. Rptr. 177 (1961) ("A dictionary definition of emergency is 'an unforeseen combination of circumstances that calls for immediate action.' "); *Hatfield v. Meers,* 402 S.W.2d 35, 39 (Mo. App. 1966) ("The

word 'emergency' has been defined as follows: 'an unforeseen combination of circumstances which calls for *immediate action.*' "); *Scatuorchio v. Jersey City Incinerator Authority,* 14 N.J. 72, 88, 100 A.2d 869 (1953) ("an 'emergency' means a 'sudden or unexpected occurrence or condition calling for immediate action' "); *Bruner v. McGlothin,* 66 Ohio L. Abs. 477, 478, 117 N.E.2d 476 (Ct. App. 1951) ("an emergency arises when there is a sudden or unexpected occurrence or combination of occurrences which demand prompt action"); *State v. Unosawa,* 48 Wash. 2d 616, 618, 296 P.2d 315 (1956) ("An 'emergency' is an unforeseen combination of circumstances which call for immediate action.").

Further, placing "personal" before "emergency" does not temper the definition of "emergency." Although addition of the term "personal" may indicate that ambulances and firetrucks are not required for 44-706(a)(11) to apply, it does not negate the plain meaning of "emergency." The combined words only tend to clarify that the emergency does not have to be something that threatens the general public.

In light of the foregoing, an impending marriage would not constitute a "personal emergency" because a marriage is not something that is generally unexpected or that requires immediate action. In the usual circumstance, whether or when one will marry is a personal decision that has been considered over a period of time. The district court erroneously interpreted 44-706(a)(11) because there were no unique facts surrounding Dannenfelser's marriage that would qualify it as a personal emergency.

This case can be distinguished from *Churchill Truck Lines, Inc. v. Department of Human Resources,* 17 Kan. App. 2d 272, 837 P.2d 1322 (1992), the only other case found that interprets 44-706(a)(11). In *Churchill,* the employer appealed a decision of the district court affirming the Board's decision that an employee was eligible for unemployment benefits under the 44-706(a)(11) exception. The employee and his family had transferred to a new city to enable the employee to take a new position with the same employer. After relocation, the employee's wife and child experienced difficulties coping with living in the new city. These difficulties culminated when the employee returned from work one evening to learn from his wife that she had rented a truck and that she wanted him to take her back to the city where they

first resided. In order to save his marriage and his family, the employee voluntarily resigned his new position and the family returned to the previous city. In affirming the decisions of the Board and the district court, we found that, due to the facts presented and the broad language of the statute, it could not be said that the Board erroneously interpreted 44-706(a)(11).

It should be noted that in *Churchill* the employee was faced with an unexpected peril, the loss or disintegration of his family, and immediate action was required to preserve the family. Here, no evidence was provided that would support a finding that the impending marriage was unexpected or that the impending marriage in any way presented a sudden or unforeseen circumstance which called for immediate action.

Reversed and remanded for further proceedings.