NOT DESIGNATED FOR PUBLICATION

No. 127,811

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOE EDWARD SILVA,
*Appellee,*

v.

KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC COMMER, judge. Submitted without oral argument. Opinion filed August 29, 2025. Reversed.

*Jessica A. Bryson*, special assistant attorney general, Kansas Department of Labor, for appellant.

No appearance by appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

PER CURIAM:  The Kansas Employment Security Board of Review (the Board) appeals the Sedgwick County District Court's order that held Joe Edward Silva was entitled to unemployment assistance benefits. The Board argues that this decision was in error because the district court misinterpreted several applicable statutes. Silva did not file a brief on appeal. After review, we reverse the district court and affirm the Board's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Since 1982, Silva was employed with Silva Security Service, a Wichita business owned and operated by Silva's father. His responsibilities included the sale and installation of ATMs.

According to Silva, in November 2020 he was hospitalized for sclerosis of the liver, complications from Hepatitis C, and upper gastrointestinal bleeding. In early December 2020, Silva was released from the hospital into hospice care in hopes of getting a liver transplant. He never returned to work.

While in hospice care, Silva, with the help of his social workers and hospice nursing staff, repeatedly made attempts to file for unemployment benefits through the Kansas Department of Labor (the agency). But Silva did not successfully file a claim until October 2021, so his benefit year was established as beginning October 3, 2021, per statute. He reported his last day of work at Silva Security as November 27, 2020. The application process informed Silva that he must seek work, which included applying for jobs, to receive benefits.

In October 2021, Silva participated in a telephone interview with an agency representative. During that interview, Silva told the representative that he had quit his job with Silva Security because of medical issues; that he was unable to work due to that medical issue as of November 20, 2020, which was his last day of work; and that his healthcare provider had not released him to work but recommended bedrest.

Silva filed several weekly claims for regular unemployment benefits for the weeks ending October 23, 2021, through January 15, 2022. These weekly claims for benefits are required to be filed each week the claimant is unemployed. Each weekly claim asks three questions: during the week being claimed, were you able to work; were you available to

work; and did you look for work. The application requires claimants to certify that the information they provide is complete, correct and true to the best of their knowledge and belief.

Silva also submitted a "Health Care Provider's Certification" to the agency. This form is used to determine whether a claimant is entitled to unemployment benefits when their departure from work is due to medical reasons. The form was filled out by Silva's health care provider, Rick Friesen. The form asked: "Did you advise claimant to leave work?" and Friesen checked the box indicating "no." He then wrote to the side: "I haven't seen him for this condition [illegible]." The signature on this note is dated December 13, 2021, and was filed with the agency on December 15, 2021. Although Friesen indicated he was not the provider who had advised Silva to leave work, he indicated Silva became unable to work on December 5, 2020, and it was unknown when Silva would be able to return to full-time work.

The form asked the certifying medical provider to describe the medical condition in lay terms. Friesen wrote "weakness, dizziness, nausea, mental fogginess, dysphoria, and poor work balance." Finally, Friesen checked "no" to these two questions: "Is claimant able to continue employment in customary occupation?" and "Able to work full-time in another occupation?"

Based on the answers to the questions in the weekly claims, the agency issued three Notices of Determination, each of which stated Silva was ineligible for unemployment benefits on dates beginning on December 5, 2020, October 3, 2021, and April 3, 2022. The Notice of Determination for benefits beginning December 5, 2020, stated that Silva was disqualified for benefits because he "voluntarily left work due to illness or injury" and he "was not advised to leave work by a licensed and practicing health care provider." During Silva's appeal of that determination, the referee stated this indicated that Silva was not qualified for unemployment benefits beginning on October 3,

3

2021, because he was not able to work. The Notice of Determination for benefits beginning April 3, 2022, stated that Silva was disqualified for benefits because Silva "is unable to work."

Silva appealed these determinations and participated in a telephone hearing with an agency referee in August 2023. Silva testified that around Thanksgiving 2020 he informed his employer, his father, that he was no longer able to work. According to Silva, his father wanted to continue to pay him, but Silva declined this offer because his medical condition prevented him from working and has prevented him from working since then. He also testified that because of his diagnosis and issue with his mail service, his appeal was filed about six months after the required date.

Later in August 2023, the appeals referee issued decisions on Silva's appeals. For the benefits starting December 5, 2020, the appeals referee found that Silva's excusable neglect allowed him to bring the untimely appeal. Still, Silva was disqualified from unemployment benefits because, although he had a compelling emergency to leave his employment, he had not made reasonable attempts to preserve the work before voluntarily leaving, so he did not meet the exception to disqualification in K.S.A. 44-706(a)(11).

> "The claimant had good personal reasons for voluntarily leaving the employment, but due to his medical condition, the claimant has not shown good cause attributable to the work or the employer necessary to qualify for unemployment insurance benefits. The claimant is disqualified for unemployment insurance benefits because the claimant voluntarily quit the work without good cause attributable to the work or the employer."

For the benefits starting April 3, 2022, the appeals referee found that Silva's excusable neglect allowed him to bring the untimely appeal. But again, the referee found that Silva was ineligible for unemployment benefits because he was not able or available to work. To be qualified for unemployment benefits, a claimant must be able and

4

available to work. K.S.A. 44-705(c). "Ability to work" requires a claimant show he or she is "able to perform the duties of such claimant's customary occupation or the duties of other occupations for which the claimant is reasonably fitted by training or experience." K.S.A. 44-705(c)(1). And "availability for work" is shown by "the claimant's pursuit of the full course of action most reasonably calculated to result in the claimant's reemployment." K.S.A. 44-705(c)(1).

Silva appealed each decision to the Board. The Board adopted the findings of fact made by the referee and affirmed the referee's decision in each appeal.

Silva then petitioned for judicial review of the Board's decisions to the Sedgwick County District Court. Yet his petition for judicial review did not allege how the Board had erred under K.S.A. 77-621(c)(1)-(8), the controlling statutes.

The Sedgwick County District Court held an informal hearing on Silva's petition for judicial review at which Silva talked with the district court and answered its questions, but he was not sworn in. Silva estimated that he had tried to call the agency to file and receive assistance with his unemployment claim around 700 times. At that hearing, the agency acknowledged that because of the COVID-19 pandemic, their office had struggled to maintain normal operations.

At the conclusion of the hearing, the district court made three findings. First, the district court determined that, for "simplicity," the agency should proceed as if Silva had filed his claim for unemployment benefits during the first week of January 2021, even though he did not file his claim until October 2021. Second, the district court held that Silva should be considered to have submitted weekly claims from the first week of January 2021 "through the period of time to October of 2021," even though these forms had not been submitted by Silva. Third, the district held that the agency was to consider

that Silva qualified for unemployment benefits under K.S.A. 44-706(a) and eligible for benefits under K.S.A. 44-705(c) for 26 weeks between January 1 and October 2021.

The district court's minute sheet states it received "limited testimony" from Silva, that it granted his petition for judicial review by overturning the Board's decision, and that it would supplement the minute sheet via a written order. The court's written order addressed Silva's qualification for benefits under K.S.A. 44-706(a)(11), holding:

> "In the instant case, the [r]eferee concluded that because Mr. Silva was 'diagnosed with a terminal illness that left him so weak he could not work,' that qualified as a 'personal compelling emergency for quitting work.' This Court is baffled by the referee's conclusion that under the same circumstances, the [r]eferee found Mr. Silva did not make 'reasonable attempts to preserve the work before he voluntarily left the employment' with his father's company. As stated previously, this Court rules such finding is unreasonable and arbitrary and is an inconsistent application of the law to the facts."

Accordingly, the district court concluded that the agency had erroneously interpreted and applied the law, that its action was based on facts not supported by the evidence, and that the agency's action was arbitrary or capricious.

The Board timely appeals the district court's decision, raising seven issues with the district court's decision under the Kansas Judicial Review Act, K.S.A. 77-601 et seq. (KJRA), and its interpretation of the unemployment act. We address only three.

I.      *The district court erred by finding Silva was eligible to receive unemployment benefits.*

We first address the Board's argument that the district court erred as a matter of law by finding Silva eligible for unemployment benefits under K.S.A. 44-705(c). It

6

contends that this statute requires that the claimant be able to work, yet the record proves that Silva has been unable to work since December 2020.

This argument involves interpretation of K.S.A. 44-705(c) and K.S.A. 77-621(c)(7). Interpretation of a statute is a question of law over which this court has unlimited review. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). "The burden of proving the invalidity of agency action is on the party asserting invalidity." K.S.A. 77-621(a)(1). In an appeal from an administrative decision under the KJRA, the reviewing court exercises the same review of an agency's actions as a district court. *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, Syl. ¶ 3, 807 P.2d 652 (1991). So although the Board has appealed the district court's reversal of its decision to this court, it is still Silva's burden to show the Board's decisions were erroneous. *Pouncil v. Kansas Employment Security Board of Review*, 268 Kan. 470, 476, 997 P.2d 715 (2000); see *Bd. of Cherokee County Comm' rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017) (stating scope of review is the same whether the KJRA action is before a district court or Kansas Supreme Court); *Hanson v. KCC*, 58 Kan. App. 2d 82, 91, 464 P.3d 357 (2020) ("This means that even though [appellant] has appealed the district court's reversal to this court, the burden of proving the Commission's decision was erroneous lies with the [appellee]. K.S.A. 77-621[a][1].").

A court may overturn an agency's action if its action is not supported by substantial evidence when the record is viewed as a whole. K.S.A. 77-621(c)(7). When reviewing an agency action under this statute, "the appellate court is limited to ascertaining from the record if substantial competent evidence supports the agency findings." *Jones v. Kansas State University*, 279 Kan. 128, 140, 106 P.3d 10 (2005). "Substantial evidence 'is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.'" *Cresto v. Cresto*, 302 Kan. 820, 835, 358 P.3d 831 (2015). When reviewing the agency's action, we are not to reweigh the evidence. K.S.A. 77-621(d); See *Redd v.*

*Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010) (explaining K.S.A. 77-621[d] "[1] . . . requires review of the evidence both supporting and contradicting the Board's findings; [2] it requires an examination of the presiding officer's credibility determination, if any; and [3] it requires review of the agency's explanation as to why the evidence supports its findings.").

An unemployed person is eligible for benefits when the agency finds the "claimant is able to perform the duties of such claimant's customary occupation or the duties of other occupations that the claimant is reasonably fitted by training or experience, and is available for work." K.S.A. 44-705(c)(1). The district court held that Silva was eligible for unemployment benefits under K.S.A. 44-705(c) for 26 weeks beginning the first week of January 2021. Yet the Board is correct that the record shows Silva has been unable to work since he left his employment in December 2020 due to his health.

Our review of the record shows that in October 2021, when Silva finally successfully filed a claim, he participated in a telephone interview with an agency representative. During that interview, he informed the representative that he had quit his job due to medical issues in December 2020; his healthcare provider had not released him to return to work but had recommended bedrest; and he was not able to work full time while on these restrictions. During the interview, he certified this information was correct and complete.

Silva submitted 24 weekly claims from October 23, 2021, through June 25, 2022. From his initial weekly claim to his last, 36 weeks elapsed. Although a few of the forms are illegible, it appears that on all of the claims but one Sliva answered "no" to whether he was able to work during that week. He certified on each weekly claim that this information was correct. And he reaffirmed at the hearing in the district court that although he had the desire to work, he did not "have the ability to perform probably the simplest of tasks in a coherent way on a daily basis, maybe once a week." In December

8

2021, a healthcare provider completed a certification form stating that Silva became unable to work as of December 5, 2020, and that he was neither able to continue employment in his customary occupation nor was he able to work full time in another occupation.

The record reflects solely that Silva was not able to work because of his health. No contradictory evidence has been shown. Substantial evidence thus supports the Board's findings.

In ruling to the contrary, the district court noted that in 2021 the Legislature amended K.S.A. 44-705(c) to excuse a worker from actively seeking employment during a state of disaster and in other situations applicable to COVID-19. See K.S.A. 44-705(c)(1)(C). But this subsection does not apply and was not cited by either party. The agency did not deny Silva's claim because he failed to look for work, and Silva did not give COVID-19 as a reason he did not seek employment. See K.S.A. 44-705(c)(1)(C).

Substantial evidence in the record supports the Board's findings that Silva was not eligible for unemployment benefits under K.S.A. 44-705(c), and the district court erred in finding otherwise.

II.    *The district court erred by finding Silva qualified for unemployment benefits under K.S.A. 44-706(a).*

Next, the Board argues that the district court erred by misinterpreting this phrase in K.S.A. 44-706(a): "Failure to return to work after expiration of approved personal or medical leave, or both, shall be considered a voluntary resignation." The court found this language meant that time spent on medical leave is compensable.

9

K.S.A. 44-706(a) states the general rule that if a claimant voluntarily leaves work without good cause, the claimant is disqualified from unemployment benefits. The appeals referee referenced this statute when finding Silva did not qualify for benefits:

> "An individual is allowed to voluntarily leave a job and still claim unemployment benefits only if the individual shows good cause that is attributable to the work or the employer, K.S.A. 44-706(a).
>
>        . . . .
>
> "The claimant had good personal reasons for voluntarily leaving the employment, but due to his medical condition, the claimant has not shown good cause attributable to the work or the employer necessary to qualify for unemployment insurance benefits. The claimant is disqualified for unemployment insurance benefits because the claimant voluntarily quit the work without good cause attributable to the work or the employer."

The Board affirmed this finding.

The district court disagreed, finding the agency's reference to K.S.A. 44-706(a) stopped short of the very next sentence of the statute that references a claimant leaving his or her job upon the expiration of medical leave. The statute states:

> "An individual shall be disqualified for benefits:
>
>        "(a) If the individual left work voluntarily without good cause attributable to the work or the employer, subject to the other provisions of this subsection. For purposes of this subsection, 'good cause' is cause of such gravity that would impel a reasonable, not supersensitive, individual exercising ordinary common sense to leave employment. Good cause requires a showing of good faith of the individual leaving work, including the presence of a genuine desire to work. *Failure to return to work after expiration of approved personal or medical leave, or both, shall be considered a voluntary resignation.* After a temporary job assignment, failure of an individual to affirmatively request an additional assignment on the next succeeding workday, if required by the employment agreement, after completion of a given work assignment, shall constitute leaving work voluntarily." K.S.A. 44-706(a) (Emphasis added.)

10

The statute then lists twelve exceptions to that general disqualification rule. K.S.A. 44-706(a)(1)-(12).

The district court construed the language we italicized above to mean that "until a departure from work for a serious medical need is ended, a period of unemployment compensation may be compensable." The court reasoned that Silva could receive unemployment compensation because his medical reason for leaving employment had not expired; he was thus qualified for benefits under K.S.A. 44-706(a).

We disagree with this interpretation. Resolution of this issue requires interpretation of K.S.A. 44-706(a), which is a question of law over which this court has unlimited review. *Bruce*, 316 Kan. at 224. "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained." *Johnson v. U.S. Food Service*, 312 Kan. 597, 600, 478 P.3d 776 (2021). An appellate court must first try to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Bruce*, 316 Kan. at 224. "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *Johnson*, 312 Kan. at 600-01.

K.S.A. 44-706(a) addresses whether an individual is disqualified from receiving benefits if the person voluntarily left work. Even if an individual is initially disqualified under K.S.A. 44-706(a) for voluntarily leaving employment, the person may still meet an exception and become qualified. See K.S.A. 44-706(a)(1)-(12). Even so, the former employee bears the burden of showing the employee meets an exception. *Gable v. Kansas Employment Sec. Bd. of Review*, No. 109,414, 2013 WL 5610349, at *4 (Kan. App. 2013) (unpublished opinion) ("Several provisions of [K.S.A. 44-706] place an affirmative duty on the employee to avoid disqualification from benefits.").

11

The relevant language about failing to return to work after expiration of an approved medical leave is not one of the 12 exceptions to disqualification listed in K.S.A. 44-706(a)(1)-(12). Instead, that sentence is found in the section used to determine whether a claimant voluntarily left work. K.S.A. 44-706(a) establishes the general rule that one is disqualified for unemployment benefits after a voluntary resignation. Twelve exceptions to that general rule follow, which we will elaborate on below. See K.S.A. 44-706(a)(1)-(12).

The district court interpreted K.S.A. 44-706(a) to mean that an employee on medical leave is eligible for unemployment benefits if the medical issue that prompted the leave still exists when the employee's leave expires and the employee then quits. But the disputed language applies when determining whether an employee voluntarily left employment for good cause, and it states that failing to return to work after the end of approved medical leave is a voluntary resignation that, barring some exception, precludes an award of unemployment benefits.

The record shows that Silva quit work. It does not show that he asked for or received medical leave. He told the agency he had quit during his initial claim interview: "On 12/20 I met with Paul Silva to let them know I was quitting. The reason I provided was . . . medical[.] I provided a notice of 0 days." He also told the referee, under oath, during his appeal hearing that he had quit. Silva did not dispute that he had quit his job. And nothing in the record suggests that his decision to quit was not voluntary, although his desire was to work. The district court misinterpreted and misapplied K.S.A. 44-706(a) as qualifying Silva for unemployment benefits.

III.     *The district court erred by applying an exception in K.S.A. 44-706(a)(11) that made Silva qualified for benefits.*

Lastly, we examine the personal emergency exception in K.S.A. 44-706(a)(11), one of the listed exceptions to the general rule that a person who voluntarily quits employment is disqualified for unemployment benefits. The district court applied this exception in finding Silva eligible for unemployment benefits. The district court found it sufficient under this exception that Silva had a qualifying personal emergency. Yet the Board argues that the district court ignored the second element of the exception—that the claimant must also show he or she made a reasonable attempt to preserve the work.

This issue involves the interpretation of K.S.A. 44-706(a)(11). As discussed above, K.S.A. 44-706(a) addresses whether an individual is disqualified from receiving benefits if the person voluntarily left work. But even if an individual is initially disqualified under K.S.A. 44-706(a) for voluntarily leaving their employment, that person may still meet an exception and become qualified thereunder. See K.S.A. 44-706(a)(1)-(12). The personal emergency exception states:

> "An individual shall not be disqualified under this subsection if:
>      . . . .
>      (11) after making reasonable efforts to preserve the work, the individual left work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification." K.S.A. 44-706(a)(11).

As the claimant, Silva bears the burden of showing he meets this exception. See *Gable*, 2013 WL 5610349, at *2.

"Each case involving voluntary termination of employment by an employee who seeks unemployment compensation under the 'personal emergency' exception . . . should be examined and evaluated on its own facts." *Dannenfelser v. Employment Security Bd.*

13

*of Review*, 17 Kan. App. 2d 755, Syl. ¶ 3, 844 P.2d 41 (1992). But the statutory language is clear.

The district court found the agency's requirement that Silva had to make a reasonable attempt to preserve the work, after the referee had found Silva had a serious medical condition that constituted a personal emergency for quitting work, "extremely inconsistent and puzzling." Yet the plain language of the statute requires that the claimant do so. As stated in *Churchill Truck Lines, Inc. v. Department of Human Resources,* 17 Kan. App. 2d 272, 276, 287 P.2d 1322 (1992): "Subsection (a)(11) has two elements: (1) the employee has made reasonable efforts to preserve the work, and (2) there exists a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification." We cannot conflate these two elements into one.

Thus, even though Silva left work due to a personal medical emergency (which the Board does not dispute), he is still required to have made a reasonable attempt to preserve the work before leaving the job. Our caselaw discussing K.S.A. 44-706(a)(11) does not explain what "reasonable efforts to preserve the work" may be, focusing instead on whether the claimant suffered a personal emergency sufficient to warrant benefits under the statute. See, e.g., *Churchill Truck Lines, Inc.*, 17 Kan. App. 2d at 278; *Dannenfelser*, 17 Kan. App. 2d 755, Syl. ¶ 1. But we view this part of the personal emergency exception as similar to requiring an employee to request a reasonable accommodation to one's job before filing a disability discrimination claim. See *Laubach v. Roberts*, 32 Kan. App. 2d 863, 873, 90 P.3d 961 (2004) ("Perhaps petitioner feels that he was forced to withdraw because of his physical disability, but, without demonstrating a request for some reasonable accommodation which was denied, the petitioner fails to establish a violation of Title II of the ADA.").

Requesting a modification to one's non-essential duties, such as different hours, light duty, or working remotely, would be examples of reasonable requests to preserve the work. Here, the record shows that Silva made no ask. Silva told the agency representative during this phone interview that he did not request a leave of absence or a transfer to a more accommodating position before quitting because he could not work. Silva thus does not dispute that he made no attempt to request modifications or reassignment that would allow him to remain employed. Nor does he contend that such a requirement as applied to him would have been futile or impossible, given his medical emergency. Silva thus failed to show that he made reasonable efforts to preserve the work before he voluntarily quit.

The district court was evidently moved by compassion for Silva, perhaps because of his honesty, his medical condition, and his extreme difficulty in reaching the agency during COVID-19. The court questioned whether K.S.A. 44-702 allowed room for compassion in the unemployment scheme and repeatedly referred to the agency's unemployment benefits claims process during COVID-19 as "ridiculous."

Yet the court is duty-bound to follow the law. A "'court cannot delete vital provisions or supply vital omissions in a statute.'" *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 293, 864 P.2d 1161 (1993) (quoting *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 [1963]). "In other words, no matter how ludicrous an appellate court may find a legislative enactment to be, the court is not free to completely rewrite the statute to make the law conform to what the court believes it should be." *Fisher v. DeCarvalho*, 298 Kan. 482, 498, 314 P.3d 214 (2013).

Still, the unemployment benefits statutes do not exclude compassion. The second element of K.S.A. 44-706(a)(11) requires a determination that "the individual left work due to a personal emergency of such nature and compelling urgency that it would be *contrary to good conscience* to impose a disqualification." (Emphasis added.) Silva met

15

this element. But the Legislature did not include a similar compassion qualifier in the first element of K.S.A. 44-706(a)(11)'s exception ("[A]fter making reasonable efforts to preserve the work"). Silva did not meet this element; thus, the personal emergency exception to disqualification of benefits in K.S.A. 44-706(a)(11) does not apply. The agency did not err by refusing to apply it in Silva's case.

We are compelled to find that the district court misinterpreted K.S.A. 44-706(a)(11) by ignoring the requirement that the claimant make a reasonable effort to preserve the work before leaving his or her job and by finding that a personal emergency—alone—can result in a claimant being qualified for unemployment benefits.

Having found that Silva was neither eligible nor qualified for unemployment benefits, we have no need to address the other issues the Board raises on appeal.

Reversed.